UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| JAMES S. PARKER, | ) |
| Plaintiff, | ) |
| v. | ) No. 3:16-CV-461-CCS |
| NANCY A. BERRYHILL,[1] | ) |
| Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 15]. Now before the Court is the Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 10 & 11] and the Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 15 & 16]. James S. Parker ("the Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of the Defendant Nancy A. Berryhill, Acting Commissioner of Social Security ("the Commissioner"). For the reasons that follow, the Court will **DENY** the Plaintiff's motion, and **GRANT** the Commissioner's motion.

## I. PROCEDURAL HISTORY

On May 24, 2013, the Plaintiff filed an application for disability insurance benefits ("DIB"), claiming a period of disability which began December 27, 2011. [Tr. 148-50]. After his application was denied initially and upon reconsideration, the Plaintiff requested a hearing. [Tr.

---

[1] During the pendency of this case, Nancy A. Berryhill replaced Acting Commissioner Carolyn W. Colvin. Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted as the Defendant in this case.

114]. A hearing was held before the ALJ on July 29, 2015 [Tr. 35-74], and on November 4, 2015, the ALJ found that the Plaintiff was not "disabled" [Tr. 15-28]. The Appeals Council denied the Plaintiff's request for review [Tr. 1-5]; thus, the ALJ's decision became the final decision of the Commissioner.

Having exhausted his administrative remedies, the Plaintiff filed a Complaint with this Court on July 22, 2016, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II. ALJ FINDINGS

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2015.
>
> 2. The claimant has not engaged in substantial gainful activity since October 15, 2010, the alleged onset date (20 CFR 404.1557 *et seq.*).
>
> 3. The claimant has the following severe impairments: human immunodeficiency virus (HIV), spinal disorder (neck and back); posttraumatic stress disorder (PTSD); panic disorder; and alcohol abuse disorder. (20 CFR 404.1520(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that he can only occasionally climb ramps and stairs and cannot climb ladders, ropes or scaffolds. He can occasionally stoop, balance, kneel, crouch and crawl. The claimant is limited to simple, routine, repetitive tasks; his interaction with coworkers and supervisors is limited to occasional, and where there is no interaction with the general public; he is limited to infrequent changes that are

introduced gradually.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on April 24, 1976, and was 34 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exists in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from October 15, 2010, through the date of this decision (20 CFR 404.1520(g)).

[Tr. 17-28].

### III.     STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).

## IV.    ANALYSIS

This case involves an application for DIB. An individual qualifies for DIB if he or she: (1) is insured for DIB; (2) has not reached the age of retirement; (3) has filed an application for DIB; and (4) is disabled. 42 U.S.C. § 423(a)(1).

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). A claimant will only be considered disabled if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage

in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A); *see* 20 C.F.R. § 404.1505(a).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). The claimant bears the burden of proof at the first four steps. *Id.* The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

On appeal, the Plaintiff asserts that substantial evidence does not support the ALJ's findings at steps two or three, the RFC determination, or step five. [Doc. 11 at 6-8]. The Court will consider the Plaintiff's more specific arguments as to each step in turn.

### A. Step Two – Severe Impairments

The Plaintiff maintains that "[t]he ALJ erred in failing to find the Plaintiff's impairments constitute severe impairments at step two of the sequential evaluation and in not further considering their effect on his ability to work." [Doc. 11 at 6]. The Plaintiff submits that the ALJ disregarded evidence "documenting these impairments" and that the record demonstrates that these impairments had more than a minimal effect on the Plaintiff's ability to work. [*Id.*].

The Court need not reach the merits of the ALJ's step two finding because the Court finds the Plaintiff has waived the issue. The ALJ did find several of the Plaintiff's conditions as severe impairments, including "human immunodeficiency virus (HIV), spinal disorder (neck and back); posttraumatic stress disorder (PTSD); panic disorder; and alcohol abuse disorder." [Tr. 17]. The Plaintiff does not identify which impairments the ALJ failed to find severe that he clams should have been found "severe," nor does he present any evidence or citation to the record to support a finding of additional severe impairments beyond those found by the ALJ. To be severe, an impairment or combination of impairments must "significantly limit[] your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The Plaintiff bears the burden of demonstrating he has a severe impairment, *see Walters*, 127 F.3d at 529, and conclusory assertions that the ALJ failed to find additional severe impairments that "the record clearly establishes" fails to satisfy his burden. *See Slater v. Potter*, 28 F. App'x 512, 513 (6th Cir. 2002) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.") (citing *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996)); *see also InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989) (noting that a district court is neither required to speculate on which portion of the record a party relies, nor is it obligated to "wade through" the record for specific facts).

6

Moreover, it is well settled that the ALJ's failure to identify some impairments as "severe" is harmless where the ALJ continues the disability determination, as is the case here, and considers all impairments, both severe and non-severe, at subsequent steps. *See Fisk v. Astrue*, 253 F. App'x 580, 583 (6th Cir. 2007) ("And when an ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, an ALJ's failure to find additional severe impairments at step two '[does] not constitute reversible error.'") (quoting *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir.1987)); *Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803 (6th Cir. 2003) ("Because the ALJ found that Pompa had a severe impairment at step two of the analysis, the question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence."). Here, although the ALJ provided a thorough discussion and analysis as to why he found that the Plaintiff's complaints of asthma, a right foot injury, hearing issues, knee pain, and traumatic brain injury were non-severe impairments [Tr. 17-21], the RFC determination demonstrates that these impairments were nonetheless considered in determining the Plaintiff's overall level of functioning. [Tr. 23-26].

Accordingly, the Court finds that the ALJ's step two finding is supported by substantial evidence, and the Plaintiff's arguments to the contrary are without merit.

### B. Step Three – Listings of Impairments

The Plaintiff challenges the ALJ's finding that the Plaintiff's back and neck impairment, as well as PTSD, did not meet or medically equal the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. [Doc. 11 at 7].

At step three, a claimant may be found disabled if his impairment meets, or medically equals, one of the listings in the Listing of Impairments. 20 C.F.R. § 404.1520(a)(4)(iii). "The listings" as they are commonly referred, "are descriptions of various physical and mental illnesses

and abnormalities . . . defined in terms of several specific medical signs, symptoms, or laboratory test results." *Sullivan v. Zebley*, 493 U.S. 521, 529–30 (1990). Each listing specifies "the objective medical and other findings needed to satisfy the criteria of that listing." 20 C.F.R. § 404.1525(c). Only when an impairment satisfies all of the listing's criteria will the impairment be found to be of listing level severity. § 404.1525(d).

Here, the ALJ found that the Plaintiff's back and neck impairment did not satisfy the criteria of Listing 1.04 – Disorders of the Spine, nor did the Plaintiff's PTSD satisfy Listing 12.06 – Anxiety Related Disorders. [Tr. 21-23]. The Court examines each listing in turn.

### 1. Listing 1.04 – Disorders of the Spine

Although the Plaintiff does not specifically cite to Listing 1.04 in his brief, that Court presumes that the Plaintiff's arguments concerning the ALJ's step three finding and citation to medical evidence pertaining to his back is a challenge to the ALJ's finding that the Plaintiff does not satisfy Listing 1.04.

Evidence of the following is required in order to meet or equal Listing 1.04:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or

8

> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 404, Subpt. P, App. 1, 1.04.

Arguing that his back pain is of listing level severity, the Plaintiff cites to imaging studies, including a March 2013 x-ray which demonstrates transitional anatomy of the L5-S1 level with pseudoarthoris, degenerative disc disease, a small bulging disc, and an annular tear, as well as an MRI from April 2013 and a subsequent x-ray from June 2013 confirming a diffused disc bulge at the L4-5 level with a right posterior annular tear with bilateral lateral recess and foraminal narrowing. [Doc. 11 at 7 (citing Tr. 752, 754, 1630)]. The Plaintiff does not explain how these imaging studies meet or equal the listing's criteria.

The Court observes that the evidence cited by the Plaintiff was specifically considered, and properly weighed, by the ALJ at step three. [Tr. 21]. In fact, the ALJ's discussion expounded upon further imaging studies and examination findings, none of which, as concluded by the ALJ, "support [] the notion that the [Plaintiff] experiences comprise of his spinal cord or a nerve root such that the subparagraphs of listing 1.04 are implicated." [*Id.*]. While the ALJ found that the medical evidence revealed progressive spinal problems [*id.*], the evidence did not demonstrate the existence of the requisite compromise of a nerve root or the spinal cord necessary to satisfy Listing 1.04. Citation to imaging studies by the Plaintiff fail to contradict the ALJ's step three finding in this regard.

### 2. Listing 12.06 – Anxiety Related Disorders

The Plaintiff also contends that he "would most likely meet Listing 12.06 for PTSD."

[Doc. 11 at 7].

Listing 12.06 provides that the criteria of paragraphs A and B, or paragraph A and C, must be satisfied as follows:

> A. Medically documented findings of at least one of the following:
> 1. Generalized persistent anxiety accompanied by three out of four of the following signs or symptoms:
> a. Motor tension; or
> b. Autonomic hyperactivity; or
> c. Apprehensive expectation; or
> d. Vigilance and scanning;
>
> or
>
> 2. A persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation; or
> 3. Recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week; or
> 4. Recurrent obsessions or compulsions which are a source of marked distress; or
> 5. Recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress;
>
> AND
>
> B. Resulting in at least two of the following:
> 1. Marked restriction of activities of daily living; or
> 2. Marked difficulties in maintaining social functioning; or
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
> 4. Repeated episodes of decompensation, each of extended duration.
>
> OR
>
> C. Resulting in complete inability to function independently outside the area of one's home.

20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.06.

The Plaintiff argues that he suffers recurrent and intrusive recollections of traumatic experiences from serving in the military and that his wife has been approved through a program with the Veteran's Administration ("VA") to become his certified caregiver. [Doc. 11 at 7] (citing Tr. 919]. The Plaintiff claims he is rarely without her company. [*Id.*]. In addition, the Plaintiff cites to a September 15, 2010, VA opinion letter from Mark W. Jacobson, Ph.D., in which Dr. Jacobson wrote that the Plaintiff's symptoms of PTSD significantly impair his interpersonal relationships, capacity and productivity to sustain employment, and concentration at work. [*Id.*] (citing Tr. 1475-76).

The Court observes that the ALJ's finding need not be supported by all the evidence, only substantial evidence. "The substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir.1986). Thus, as long as substantial evidence supports the ALJ's finding, the fact that the record contains evidence which could support an opposite conclusion is irrelevant. *Blakley*, 581 F.3d at 406 (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir.1997)). To that end, the Court finds that substantial evidence supports the ALJ's finding that the Plaintiff does not meet the criteria of paragraph B or paragraph C. [Tr. 21-23].

With regard to the paragraph B criteria, the ALJ found that the Plaintiff has mild restrictions in activities of daily living. [Tr. 22]. The ALJ's finding is supported by citation to the Plaintiff's Function Report which indicates he does some cooking, engages in hobbies (such as music, family, television, and some live music events), and interacts with friends and family via computer and occasionally in person. [*Id.* (citing Exhibit 3E)]. Additionally, the ALJ noted that medical records indicated that the Plaintiff worked on and rode his motorcycle, drove to appointments on his own, traveled, walked his dog, exercised at the gym, and participated in the care of his son. [*Id.* (citing

Exhibits 1F, 4F, 17F, & 18F)]. Relying on similar evidence, the ALJ found that the Plaintiff had moderate difficulties in social functioning, giving credence to the Plaintiff's symptoms of PTSD in which the Plaintiff expressed discomfort around others. [*Id.*]. Likewise, the ALJ found that the Plaintiff had moderate difficulties with concentration, persistence, and pace as the Plaintiff retained the ability to drive, ride a motorcycle, play guitar in a band, read, work on his motorcycle, and attend college classes for two years during the period of his alleged disability. [*Id.*]. Finally, the ALJ found a lack of evidence suggesting episodes of decompensation of extended duration. [*Id.*]. As to paragraph C, the ALJ found that the record failed to demonstrate a complete inability to function outside of a highly supportive living arrangement. [Tr. 22-23]. Indeed, the Plaintiff's reported activities of riding a motorcycle, playing in a band, going to the gym, and attending college classes, for example, are inapposite of an inability to function outside of a highly supportive living arrangement.

The foregoing evidence provides substantial evidence that the Plaintiff's PTSD is not of listing level severity despite the Plaintiff's citation to his wife becoming a certified caretaker and a single medical opinion of record. Moreover, the Plaintiff does not draw any connection between the evidence he cites and the criteria of the listing, or argue which criteria has been satisfied and why. Regardless, the Court finds that the ALJ's discussion with regard to Listing 12.06 is supported by substantial evidence and is well within the ALJ's "zone of choices" as factfinder of the record.

**C. RFC**

The Plaintiff further contends that the ALJ's RFC determination is not supported by substantial evidence.

"The determination of a claimant's [RFC] is a determination based upon the severity of his

medical and mental impairments." *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999). The RFC describes "the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from—though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002). Therefore, "[a] claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other." *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. Feb. 9, 2007).

The ALJ is responsible for making an RFC determination after reviewing all the relevant evidence in the record. *Rudd v. Comm'r of Soc. Sec.*, No. 12-6136, 2013 WL 4767020, at *8 (6th Cir. Sept. 5, 2013). This includes a review of both medical and non-medical evidence. *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. Aug. 18, 2009). A court will not disturb an ALJ's RFC determination so long as the finding is supported by substantial evidence. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

The Plaintiff submits that the combination of his physical and mental impairments preclude him from performing substantial gainful activity on a sustained basis. [Doc. 11 at 8]. Specifically, the Plaintiff argues that his cervical and lumbar spine would cause absenteeism due to pain, as well as problems with lifting, carrying, looking side to side or up and down, prolong sitting, and other exertional activities; that a traumatic brain injury effects his ability to concentrate, follow instructions, or interact with others; and that his psychosocial functioning is severely impaired due to PTSD, depression, and anxiety. [*Id.*]. The Plaintiff bears the burden of proving his RFC, *see Her*, 203 F.3d at 391, and his own statements about the limiting effects of his impairments, without citation to support in the medical record, is insufficient to undermine the ALJ's RFC determination. *See* 20 C.F.R. § 404.1529(a) ("However, [a claimant's] statements about [] pain or

13

other symptoms will not alone establish that [the claimant is] disabled. . . .").

The ALJ considered the Plaintiff's cervical and lumbar spine condition, first finding them to be severe impairments and then assessing their functional effect. [Tr. 17, 25]. In limiting the Plaintiff to light work with additional limitations, the ALJ acknowledged that the Plaintiff had progressive spinal problems and some level of degeneration. [Tr. 21, 25]. However, there was no evidence that the Plaintiff required a cane for ambulation despite his claims to the contrary. [Tr. 25, 1201]. And despite the Plaintiff's claim that his L5-S1 disc was "completely gone," that his L5 vertebra was fused to S1, and that he had a ruptured disc at L4-5, the ALJ observed that an MRI only confirmed a disc bulge at L4-5 while clinical evidence demonstrated some radicular symptoms in the Plaintiff's left leg. [Tr. 25, 1592].

As to the effect of the Plaintiff's mental impairments, the ALJ observed that VA medical records consistently reflected a global assessment of functioning score of 60, indicating no more than moderate difficulties in functioning, and generally documented only moderate problems. [Tr. 25-26, 1164, 1473]. Moreover, the severity in which the Plaintiff claimed to suffer from panic attacks was not supported by the record. [Tr. 25, 1987]. The ALJ also cited to treatment notes from an occupational therapist who described the Plaintiff as a "highly functional individual." [Tr. 26, 807, 916, 1024]. As to the Plaintiff's claim that he suffers from traumatic brain injury which limits his ability to concentrate, engage in social interactions, and follow instructions, the ALJ provided a thorough discussion as to why the record failed to substantiate a medical determinable impairment of traumatic brain injury. [Tr. 19-21]. Mostly notably, the ALJ discussed a July 2015 neuropsychology evaluation by Robert Hughes, M.D., in which testing yielded no support for any organic etiology. [Tr. 19-21, 1663]. Instead, Dr. Hughes found "test results were strongly suggestive of significant emotional/motivational issues." [Tr. 20, 1663]. Moreover, while the

Plaintiff scored in the range of mentally handicapped on intelligence testing, Dr. Hughes observed that, "clearly, for whatever reason, the veteran was selectively not putting forth adequate effort on testing of memory function" and found the Plaintiff was somatically preoccupied, with no evidence of a severe memory impairment. [Tr. 20, 1664, 1667].

The Plaintiff's reported activities, as observed by the ALJ, likewise belie the limiting effects that Plaintiff contends are caused by the forgoing impairments. For example, the Plaintiff argues that he cannot lift or carry any significant weight, look side to side, sit for a prolonged periods of time, or bend, and has trouble concentrating, interacting with others, and following instructions. [Doc. 11 at 8]. However, the Plaintiff reported doing household work regularly, riding a motorcycle, working out, attending a trip to go fly-fishing, traveling with his wife in an RV, and playing guitar in a band. [Tr. 25 (citing Exhibits 3F, 5F, & 18F)]. These reported activities, in addition with treatment records that describe moderate limitations and characterize the Plaintiff as a "highly functional individual," provide substantial evidence supporting the specific limitations assessed by the ALJ in the RFC determination.

Accordingly, the Plaintiff's allegations that he is more limited than opined by the ALJ are without merit.

### D. Step Five – Other Work

Finally, the Plaintiff maintains that he is unable to engage in other work due to his RFC "as indicated by his testimony and outlined by the medical records of the [VA]." [Doc. 11 at 8].

At step five of the disability determination, the Commissioner has the burden of proving that other work exists in the national economy that the claimant can perform giving his RFC and vocational factors, including age, education, and work skills. *Walters*, 127 F.3d at 529 (citing 20 C.F.R. § 404.1520). Generally, the Commissioner may meet her burden by applying the medical-

vocational guidelines ("the grid"), which indicates whether a claimant is "disabled" or "not disabled" based upon the claimant's age, education, and whether he has transferable job skills. *Id.* (citing *Wright v. Massanari*, 321 F.3d 611, 615 (6th Cir. 2003); *Burton v. Sec'y of Health & Human Servs.*, 893 F.2d 821, 822 (6th Cir. 1990)). However, if a claimant suffers from non-exertional limitations or cannot perform substantially all of the exertional demands of a job at a given exertional level, the grid provides only a framework for the Commissioner's decision, and she must utilize other evidence, such as testimony from a VE, to determine whether the claimant can perform other work in the national economy given the claimant's RFC. *Id.* (citing *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 537-38 (6th Cir. 2001); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996)).

The Court finds that substantial evidence supports the ALJ's step five finding. The ALJ observed that because the Plaintiff's mental impairments eroded the unskilled occupational base for light work, VE testimony was necessary to determine whether jobs existed in the national economy that the Plaintiff could perform given his RFC. [Tr. 27-28]. During the administrative hearing, in response to the ALJ's questioning of whether other jobs existed for a hypothetical individual with the same RFC as the Plaintiff, the VE testified that an individual with said limitations could perform the jobs of an assembler of small products, a laundry worker, and a product packager. [Tr. 28, 67]. In order for substantial evidence to support an ALJ's reliance on a VE's answer to a hypothetical question, the question must accurately reflect all of a claimant's physical and mental impairments. *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). The Court finds that the hypothetical question in this case meets this standard as all of the limitations set forth in the Plaintiff's RFC were incorporated into the hypothetical question presented to the VE. The Plaintiff does not cite to any additional or different limitations

16

that should have been included in the hypothetical, and to the extent that the Plaintiff would generally have more restrictive limitations incorporated, "[h]ypothetical questions . . . need only to incorporate those limitations which the ALJ has accepted as credible." *Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 865 (6th Cir. 2011). Because the Court has found that substantial evidence supports the ALJ's RFC determination, the Court likewise concludes that the limitations presented to the VE were proper.

Therefore, the Court finds the Plaintiff's allegation of error as to the ALJ's step five finding not well-taken.

## V. CONCLUSION

Based on the foregoing, the Plaintiff's Motion for Summary Judgment [**Doc. 10**] will be **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 16**] will be **GRANTED**. The decision of the Commissioner will be **AFFIRMED**. The Clerk of Court will be directed to **CLOSE** this case.

**ORDER ACCORDINGLY.**

    s/ C. Clifford Shirley, Jr.
United States Magistrate Judge